# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT

I, Nicola Fabrizio, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), herein after referred to as Affiant, being duly sworn, do hereby depose and state as follows:

## Affiant's Background and Qualifications

1. Affiant is a duly sworn Special Agent (SA) of the ATF. As such, Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code that is, a Special Agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. Affiant has been involved in the investigation of various individuals and organizations involved in the illegal manufacturing, distribution, and use of controlled substances and firearm violations. Affiant has conducted surveillance operations and has become familiar with the methods used by individuals engaged in the illegal manufacturing, distribution, and use of controlled substances and firearm violations. Affiant has been lead investigator or has participated in many criminal investigations involving violations of Federal drug and firearm laws. Affiant has executed search warrants related to illegal drug and firearm operations.

3. Based on Affiant's training and experience, as well as the training and experience of all involved law enforcement investigators contributing to the furtherance of this investigation, Affiant knows that while some drug traffickers attempt to keep their drug trafficking activities separate from their residences, many drug traffickers conduct their drug trafficking activities at locations where they reside and as a result retain evidence relating to drug trafficking therein. Regardless of where drug traffickers conduct their drug activities, drug traffickers typically keep records, papers, documents and other

evidence of such trafficking offenses at locations where the items can be readily accessed, to include the drug trafficker's place of residence.

4. Affiant also knows that the sale of illegal drugs is mostly conducted on a cash basis and that persons involved in the regular trafficking of drugs often maintain control over significant amounts of currency, as both "working capital" and as "profits", at their places of residence and/or other properties they control.

5. Drug traffickers commonly utilize vehicles to transport drugs and proceeds from drug sales, to include U.S. currency, between various locations. To avoid detection and confiscation, the vehicles used to transport both drugs and currency are often outfitted with hidden compartments designed to conceal the money or contraband.

6. Affiant knows that it is common for drug trafficking organizations ("DTOs") to use cellular telephone text messaging features to communicate with associates relating to the logistics of their drug trafficking business. Affiant is also aware that DTOs commonly use pre-paid telephones, which require little or no subscriber information, to avoid law enforcement detection and interception. Affiant knows that those involved in illegal drug operations or other criminal conduct use slang and/or coded language when communicating about drug matters.

7. Affiant is aware that individuals involved in drug trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may include notes, records, or ledgers of drug sales, past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators. These records may be stored physically or digitally on computers or other electronic devices or media. Affiant knows that drug traffickers often maintain such records at their place of residence

even when the residence is not being used to store drugs or to conduct drug sales or other drug activity.

8. Affiant's knowledge of the facts alleged in this affidavit are based on conversations with other law enforcement officers, including ATF agents/officers; information received from law enforcement databases; and from Affiant's personal participation in the investigation does not set forth all of my knowledge about this matter.

9. This Affidavit is being submitted for the limited purpose of securing establish probable cause in support of the Complaint against Antonio **KNOTT**. Your Affiant has not included each and every fact known concerning this investigation; rather Your Affiant has set forth only those facts believed necessary to establish probable.

10. This Affidavit is offered in support of a Criminal Complaint against Defendant Antonio **KNOTT** for the following offenses: Title 21 U.S.C. Sections 841(a)(1), 843(b) and 846, to wit: distributing and possessing with the intent to distribute controlled substances; use of a communication facility to facilitate a felony drug offense, and conspiracy to distribute and to possess with the intent to distribute controlled substances.

## PROBABLE CAUSE

11. Since November 2022, Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and ATF colleagues in the narcotics law enforcement community have been investigating the drug trafficking activities of Antonio **KNOTT**. SA Fabrizio along with fellow Agents, have personally debriefed a confidential informant CI # ("hereinafter "CI # 31499"), who identified **KNOTT** as a known distributor and trafficker of fentanyl/heroin. A review of the Cuyahoga County Court of Common Pleas Docket reveals **KNOTT's** criminal history to contain, but not limited to: Aggravated Theft 2913.02A(1), Docket# CR-10-535613-

A (M1) and Aggravated Theft 2913.02A(1) (F5) DOCKET# CR-04-457505-A. ATF agents utilized a CI on multiple occasions to purchase fentanyl/heroin from **KNOTT** within Cuyahoga County, Ohio area. The CI has provided information in exchange for consideration in a pending criminal case. The CI has provided information to law enforcement agents, which has been corroborated through independent means. CI information has been corroborated to the extent possible by a debriefing of CI, and law enforcement surveillance. The CI is provided information in exchange for consideration in a pending criminal case. Your Affiant and Affiant's colleagues in the narcotics law enforcement community have been receiving information regarding the drug trafficking activities of Antonio **KNOTT** from the aforementioned CI has been listed in this Affidavit. CI has multiple arrests and convictions for theft and receive stolen property. CI information has been corroborated to the extent possible by a debriefing of CI, and law enforcement surveillance

12. In November 2022, ATF received information using the CI that **KNOTT** is distributing large quantities of heroin/fentanyl. CI further stated that **KNOTT** utilizes the phone number 714-269-3087 herein after referred to as **TT-1**. The CI was able to provide a location where the deals typically occurred which through mobile surveillance and the assistance of other law enforcement personnel your Affiant was able to determine where **KNOTT** was living and or storing his illegal narcotics.

13. Your Affiant identified **KNOTT** through researching **TT-1** via law enforcement databases which revealed the phone number to be registered to Antonio **KNOTT.** The CI was able to identify **KNOTT** via an image from the Ohio Law Enforcement Gateway (OHLEG) which utilized **KNOTT's** license picture form the Bureau of Motor Vehicles. **KNOTT** can be described as a black male, 5'10" 205 pounds, with a DOB of 01/18/19XX.

2

14. On November 28, 2022, ATF SA Nicola Fabrizio and Task Force Officer (TFO) Kevin Cesaratto met with CI in regards to the CI purchasing one ounce of fentanyl from a male known as "Water". The CI informed that "Water" was always contacted via cellphone at 714-269-3087. SA Fabrizio utilized online law enforcement databases and learned that number belonged to Antonio D. KNOTT. SA Fabrizio displayed **KNOTT's** license image to the CI and asked if the picture was "Water". The CI confirmed that **KNOTT** and "Water" were the same person.

15. The CI told SA Fabrizio that **KNOTT** had been calling the CI about purchasing a larger amount of narcotics and that **KNOTT** was "looking to do business". The CI informed that **KNOTT** likes to discuss his business and often brags about how he always has a large amount of illegal drugs on hand.

16. On November 29, 2022, SA Fabrizio and SA Hans Wiedenhofer met with the CI at a predetermined location. The CI conducted a recorded phone call to **KNOTT**. After some casual conversation the CI and **KNOTT** came to the agreement of the sale of one ounce of fentanyl for one thousand dollars ($1000).

17. On November 30, 2022, ATF CI conducted a controlled purchase of illegal narcotics. The CI contacted **KNOTT** using **TT-1**. **KNOTT** instructed the CI to meet him at "usual spot" in reference to the Turney Town Shopping Center, located at 4948 Turney Rd, Garfield Heights, OH. The Turney Town Shopping Center is located approximately .6 miles from **11110 Vernon Ave**. SA Fabrizio and SA Snyder searched the CI and the CI's vehicle. The CI and vehicle were found to be free of contraband by both SA Fabrizio and SA Snyder. The following is a summary of the event and transaction, it is not to be read as a transcript.

18. At approximately 4:25pm, SA Fabrizio and SA Snyder departed the staging

3

location and followed CI to the area of 4948 Turney Rd, Garfield Heights, OH. using Agent Cashier funds which consist of recorded bills and recorded serial numbers. The controlled purchase resulted in 11.7 grams of suspected heroin being purchased.

19. At approximately 4:45pm, The CI arrived at the arranged meeting location and contacted **KNOTT**. **KNOTT** directed the CI to a location nearby off Plymouth Avenue. The CI was ultimately directed to Garfield Park Reservation in Garfield Heights. The CI parked on E.115th Street and called **KNOTT** again to meet up.

20. At approximately 4:56pm **KNOTT** approached on foot wearing a camo-style green sweatshirt and dark colored sweatpants walking a dog. **KNOTT** entered the front passenger side door of the CI's vehicle. The CI and **KNOTT** once again engaged in casual conversation. **KNOTT** asked the CI if the CI knew how to "set it up" to which the CI confirmed they did. You Affiant knows from training and experience investigating drug traffickers that the phrase, "set it up" is a street term for mixing illegal drugs with other chemicals and compound to make more drugs.

21. The CI completed the transaction using prerecorded government funds. After some casual conversation the CI and **KNOTT** parted ways.

22. At approximately 5:05pm the CI met with SA Fabrizio and Snyder at a predetermined location and turned over the purchased fentanyl. The CI and CI vehicle were once again searched, no contraband was found.

23. At the conclusion of the purchase law enforcement personnel conducted mobile surveillance of **KNOTT**. **KNOTT** was followed and last seen in the area of 11110 Vernon Avenue Garfield Heights, Ohio, but not seen entering the residence at that time.

24. The purchased evidence was transported back to the Cleveland Field Office

4

where it was weighed, and a field test was conducted. The field test results were inconclusive due to the lack of the proper testing kit (Heroin vs Fentanyl). The purchased evidence weighed approximately 99.5 grams which is approximately 3.5 ounces. The purchased heroin/fentanyl was sent to the CCRFSL for further testing.

25. On December 01, 2022, the 99.5-gram sample was sent to the Cuyahoga County Medical Examiner for lab testing. Upon lab examination by the Cuyahoga County Medical Examiner's Office showed the contents to be a mixture of 98.24 grams of Heroin, a Schedule I substance, Fentanyl, a Schedule II substance and 4-ANPP, a Schedule II substance as well. (CCFRSL Case#2022-010526-0001).

26. On December 14, 2022, CI notified SA Fabrizio that CI was contacted by Antonio KNOTT to set up a purchase of another large amount of fentanyl.

27. On December 15, 2022, SA Fabrizio and ATF TFO Kevin Cesaratto met with the CI at a predetermined location. The CI conducted a recorded phone call to **KNOTT** at **TT1**. The CI and **KNOTT** engaged in conversation about another sale of fentanyl. **KNOTT** told the CI that he only made the previous sale to the CI to help the CI out and that **KNOTT** usually only sells an ounce of black tar fentanyl at a time for one thousand three hundred dollars ($1300)**. KNOTT** then said that he wanted to sell the CI half a kilogram of fentanyl for ten thousand dollars ($10,000) and that would give the CI the most profit. After some casual conversation the CI and KNOTT came to the agreement of the sale of one ounce of black tar fentanyl for one thousand dollars ($1300).

28. SA Fabrizio contacted Drug Enforcement Administration (DEA) TFO Christopher Giordano in regards to the potential large amount of fentanyl available for sale. DEA TFO Giordano, TFO Ryan Kron and SA Corey Jutte agreed to assist on the second deal

5

and to observe the drug lab results to confirm that **KNOTT** in-fact was selling black tar fentanyl.

29. On December 30, 2022, SA Fabrizio and DEA TFO Giordano met with CI at a predetermined location and made another recorded call to **KNOTT** via **TT-1**. The CI contacted **KNOTT** and asked if he was ready for him. **KNOTT** stated that he was but was on a time constraint.

30. SA Fabrizio and SA Snyder met with the CI at a predetermined location searched the CI and the CI's vehicle. The CI and vehicle were found to be free of contraband by both SA Fabrizio and SA Snyder.

31. At approximately 10:30 am, SA Fabrizio and Snyder departed the staging location and followed CI to the area of 11110 Vernon Avenue, Garfield Heights, Ohio.

32. At approximately 10:58 am, The CI arrived at the arranged meeting location and contacted **KNOTT**. **KNOTT** directed the CI. The CI was ultimately directed to Garfield Park Reservation in Garfield Heights. The CI parked E.117th Street and Edgewater called **KNOTT** again to meet up. **KNOTT** arrived in a gray Volkswagen Atlas bearing Missouri plates EH5E3M. DEA later informed the vehicle was a rental from Enterprise which was in-fact rented to Antonio **KNOTT** and under the same phone number as **TT-1**.

33. At approximately 11:15am the CI entered **KNOTT's** vehicle, and a brief casual conversation occurred. **KNOTT** previously mentioned that he did not have a lot of time to waste because he had a funeral to attend. When the transaction was complete the CI and **KNOTT** parted ways.

34. At 11:25am the CI met with SA Fabrizio and SA Snyder at a predetermined staging location where the CI provided the purchased ounce of suspected fentanyl. The CI and CI

6

vehicle were once again searched, no contraband was found.

35. While the CI and purchased evidence were being secured ATF and DEA personnel conducted mobile surveillance on **KNOTT**. DEA SA Jutte and ATF TFO Cesaratto followed the aforementioned Volkswagen back to 11110 Vernon Avenue. Law enforcement personnel confirmed that **KNOTT was seen** entering 11110 Vernon Avenue Garfield Heights, Ohio at the conclusion of the deal.

36. The suspected heroin/fentanyl was transported to ATF Cleveland Field Office where it was weighed, approximately 29.1 grams, and entered into evidence.

37. On December 16, 2022, SA Fabrizio and TFO Kopchak brought the purchased evidence to the Cuyahoga County Medical Examiner Office for lab testing.

38. On December 27, 2022, lab examination by the Cuyahoga County Medical Examiner's Office showed the contents to be a mixture of 28.13 grams of Heroin, a Schedule I substance, Fentanyl, a Schedule II substance and 4-ANPP, a Schedule II substance as well (CCFRSL Case#2022-010526-0002).]

39. On January 9, 2023, SA Fabrizio authored and swore to a prospective location warrant with United Stated District Court Judge Jennifer Dowdell Armstrong in the Northern District of Ohio.

40. On January 10, 2023, your Affiant received information from ATF CI that was contacted by Antonio **KNOTT**, in regard to purchasing another large amount of fentanyl.

41. On January 10, 2023, SA Fabrizio and ATF TFO Donald Kopchak met with the CI at a predetermined location. The CI conducted a recorded phone call to **KNOTT**. After some casual conversation the CI and **KNOTT** came to the agreement of the sale of two ounces of fentanyl for two thousand six hundred dollars ($2600).

7

42. On January 11, 2023, SA Fabrizio and SA Joshua Snyder met with CI at a predetermined location and made another recorded call to **KNOTT** via his cellphone number. The CI asked **KNOTT** if he was ready, **KNOTT** stated that he was already in the area and had to run to the store. SA Fabrizio and SA Snyder relayed the information to the surveillance/react team Your Affiant and SA Snyder searched the CI and the CI's vehicle. The CI and vehicle were found to be free of contraband by both your Affiant and SA Snyder.

43. At approximately 11:45am SA Fabrizio and SA Snyder left the predetermined staging area and followed the CI to the buy location.

44. At approximately 11:50 am, law enforcement personnel observed a Honda Civic bearing Ohio Reg#JKQ9931 parked in the driveway of **11110 Vernon Ave, Garfield Heights, Ohio**.  A review of online law enforcement data bases revealed that the vehicle belongs to Flex Drive Service LLC which is a car rental agency based out of Cleveland, Ohio. It is common practice among drug trafficker to utilize these rental vehicles to avoid detection and vehicles being traced back directly to their true identity.

45. At approximately 11:58am the CI arrived at the predetermined location and contacted **KNOTT** to meet up.

46. At approximately 12:04pm, the Honda was observed by law enforcement personnel leaving **11110 Vernon Ave.**

47. At approximately 12:04pm the Honda arrived to meet the CI.  **KNOTT** was observed as the operator of the Honda.  **KNOTT** and the CI engaged in conversation in regards to how much money **KNOTT** was making.  **KNOTT** stated that he saves approximately ten thousand dollars per load of drugs. **KNOTT** again mentioned to the CI that the CI could make much more profit off of buying the entire half kilo of black tar fentanyl.

8

48. At approximately 12:04pm KNOTT's arrived, and the CI entered KNOTT's vehicle. KNOTT stated that he was going down to Columbus, Ohio this weekend. The CI then began to speak with KNOTT about potentially obtaining a weapon. KNOTT stated that he knew someone who was a wholesaler and would only sell firearms in bulk. KNOTT then says the previously mentioned arms dealer tried to sell him a hand grenade in the past as well.

49. The purchased evidence was transported back to the Cleveland Field Office where it was weighed. The purchased evidence weighed approximately 58.0 grams. The purchased heroin/fentanyl was sent to the CCRFSL for further testing, results pending.

50. While evidence was being transported back to the office, law enforcement personnel were conducting surveillance on **KNOTT**. **KNOTT** made several stops and completed errands before pulling the Honda back into **11110 Vernon Ave, Garfield Heights, Ohio.** **KNOTT** was then observed by DEA personnel entering the residence at the conclusion of his errands and multiple stops.

51. On January 18, 2023, SA Fabrizio swore to a search warrant for 1110 Vernon Avenue with United States District Court Judge Jennifer Dowdell Armstrong in the Northern District of Ohio.

52. On January 18, 2023, ATF with the assistance of DEA and Garfield Heights Police Crime Suppression Unit executed the search warrant at 1110 Vernon Avenue and effected an arrest of Antonio **KNOTT**.

53. SA Eric Madry placed **KNOTT** into handcuffs and brought outside the residence once it was deemed safe and clear. SA Fabrizio advised **KNOTT** of his Miranda Warnings in the presence of DEA TFO Christopher Giordano. **KNOTT** said that he understood.

54. SA Fabrizio explained to **KNOTT** who he was and introduced DEA TFO Giordano. SA Fabrizio asked **KNOTT** if he was interested in speaking with them in regard to why a search warrant was executed. **KNOTT** agreed that he would speak with SA Fabrizio and TFO Giordano. SA Fabrizio explained that they had been watching **KNOTT** for some time. SA Fabrizio asked **KNOTT** about a recently deceased female named "Destiny". **KNOTT** stated that he was working in Columbus, Ohio when Destiny had passed away and he did not know how she passed away. SA Fabrizio asked **KNOTT** what he did for work. **KNOTT** said that he was a promoter for herbs and things involving herbal sales at clubs and restaurants. SA Fabrizio asked **KNOTT** if he dealt in illegal narcotics. **KNOTT** said that he only dealt in marijuana-based products. SA Fabrizio then asked if **KNOTT** dealt anything other than marijuana. **KNOTT** ultimately admitted that he had dealt narcotics but stated he has not dealt them in the last few months. **KNOTT** said that he did not have anything in the house pertaining to illegal narcotics. **KNOTT** said that Destiny was staying at his house while he was gone and that Destiny had packed the house up to move prior to him coming home. **KNOTT** said that he was getting out of the drug game and last sold heroin a month and a half ago. **KNOTT** stated that he had Mexican tar in reference to black tar heroin. **KNOTT** then said that he has not purchased any fetty, in reference to fentanyl. SA Fabrizio did not mentioned fentanyl up to this point. SA Fabrizio then asked **KNOTT** then stated that he had tar, pure heroin with no fentanyl. SA Fabrizio then asked where **KNOTT** last purchased the black tar. **KNOTT** then said that he could not elaborate on that topic.

55. During the search of 1110 Vernon Avenue, agents recovered the following: Two (2) Scales with small spoon both with residue, Two (2) cellular phones, one iPhone and Samsung, One (1) press with residue and One (1) Blender container with residue.

10

56. At the conclusion of the search of the home, SA Madry attempted to speak to **KNOTT** again. **KNOTT** mentioned that there was a half kilo of black tar heroin that Destiny had stashed, and he did not know where it was.

## CONCLUSION

For the foregoing reasons, your Affiant submits that there is probable cause in support of a criminal complaint against Antonio **KNOTT** for the following offense: Title 21 U.S.C. Sections 841(a)(1), 843(b) and 846, to wit: distributing and possessing with the intent to distribute controlled substances; use of a communication facility to facilitate a felony drug offense, and conspiracy to distribute and to possess with the intent to distribute controlled substances.

Respectfully submitted,

_____
Nicola A. Fabrizio
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

This affidavit was sworn to by the affiant
by telephone after a PDF was transmitted
by email, per Fed. R. Crim. P. 4.1, 41(d)(3),
this 18th day of January, 2023. At 6:42 p.m.

_____
JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF OHIO